UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

CHARLOTTE GARDNER, et al.,      :     06 Civ. 5998 (WHP)
                                                    06 Civ. 5999 (WHP)
                Petitioners,     :     06 Civ. 6001 (WHP)
                                                      06 Civ. 6002 (WHP)
      -against-            :     06 Civ. 6003 (WHP)

PETER WEISMAN,             :

                Respondent.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

PETER WEISMAN,             :

                Plaintiff,      :     06 Civ. 6012 (WHP)

      -against-            :

DANIELLE B. GARDNER,       :

                Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

ORDER

WILLIAM H. PAULEY III, District Judge:

        On August 18, 2006, this Court conducted a hearing on the following applications

of Respondent-Plaintiff Peter Weisman ("Weisman" or "Respondent"): (1) a motion for a

temporary restraining order pursuant to Fed. R. Civ. P. 65 prohibiting Petitioner-Defendant

Danielle Gardner ("Danielle Gardner" or "Petitioner") from making unilateral decisions

regarding the business operations of P&J Realty Management, LLC ("P&J"); and (2) a motion to

dissolve the ex parte temporary restraining orders entered by the New York Surrogate's Court on

July 28, 2006 (the "Surrogate's TROs") prohibiting Weisman from "marketing, transferring,

selling, leasing, offering for sale, offering for condominium conversion, or otherwise disposing

of" the P&J properties located at the following addresses: 14-15th Street, West 56th Street, 160th Street, East 22nd Street and 100 Fifth Avenue (collectively, the "Properties"). For the reasons stated on the record during the August 18 hearing, Weisman's motion for a temporary restraining order is denied. For the reasons set forth below, Weisman's motion to dissolve the Surrogate's TROs is granted.

"On this motion to dissolve a temporary restraining order, [Petitioner], the party that obtained the order, bears the burden of justifying continued injunctive relief." SG Cowen Sec. Corp. v. Messih, No. 00 Civ. 3228 (HB), 2000 WL 663434, at *1 (S.D.N.Y. May 17, 2000). To secure a temporary restraining order, a party must demonstrate (1) that irreparable harm is likely absent an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation plus a balance of hardships tipping decidedly in Plaintiff's favor. See Mony Group, Inc. v. Highfields Capital Management, L.P., 368 F.3d 138, 143 (2d Cir. 2004); Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd., 339 F.3d 101, 108 (2d Cir. 2003).

Petitioners have failed to identify the irreparable harm arising from Weisman's marketing and selling of the Properties. Although sale of a property would dissolve the corresponding partnership, Petitioner has not shown why money damages would be insufficient to compensate her for the alleged harm. Rodriguez v. DeBuono, 162 F.3d 56, 61 (2d Cir. 1998) (Irreparable harm is an "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.") Moreover, the Agreement between Weisman and Petitioner dated May 29, 2006 (the "May 29 Agreement") grants Petitioners the right of first refusal for all of the Properties except 100 Fifth Avenue. Weisman cannot prevent Petitioners from maintaining their ownership interests in these properties.

2

Nor have Petitioners established a likelihood of success on the merits. With regard to 100 Fifth Avenue, Weisman contends that Joseph Gardner failed to designate a successor General Partner of the 100 Fifth Avenue Company L.P. and, therefore, Petitioner has no right to object to the disposal of the property. Section 9.2 of the 100 Fifth Avenue Partnership Agreement provides:

> Upon the happening of a disabling even with respect to a General Partner, the successor General Partner to such disabled General Partner shall be the person designated by such disabled General Partner in a written instrument theretofore executed by such disabled General Partner in recordable form, or in such disabled Partner's Last Will and Testament . . .

(Affidavit of Peter Weisman, dated Aug. 7, 2006 ("Weisman Aff.") Ex. H.) The Trust obtained Joseph Gardner's economic interest in 100 Fifth Avenue only through the "rest, residue and remainder" clause of his will. According to Weisman, because Joseph Gardner failed to "designate" the Trust or Danielle Gardner by name as successor to the General Partnership, Weisman is now the sole General Partner of 100 Fifth Avenue by operation of Section 9.2. Petitioner responds with a broader interpretation of Section 9.2's designation requirement. According to Petitioner, that Section does not explicitly require that Joseph Gardner's successor be designated by name. The designation may purportedly occur through any type of bequest, regardless of its specificity.

A contract is ambiguous "where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and . . . is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 197 (2d Cir. 2005) (internal quotation omitted). The text of Section 9.2 has more than one reasonable interpretation, and therefore is ambiguous. Because

the parties have yet to submit extrinsic evidence on this issue, Petitioner has failed to meet her burden of showing that the more expansive interpretation of Section 9.2 is correct. SG Cowen Sec. Corp., 2000 WL 663434, at *1.

Next, Weisman contends that the May 29 Agreement allows "either General Partner," i.e., either Weisman or the Trust, to "market and sell" the properties located at 14-15th Street, West 56th Street, 160th Street, and East 22nd Street. Previously, all decisions required the unanimous approval of the General Partners. Weisman asserts that the May 29 Agreement supersedes this unanimity requirement by permitting a unilateral sale of the properties. Petitioner responds that the May 29 Agreement is void. Absent the Agreement, however, the partnerships would have dissolved on May 30, 2006. (Weisman Aff. ¶¶ 20, 23.) At the August 18 hearing, Petitioner's counsel conceded that the May 29 Agreement was necessary to avoid dissolution of the partnerships. Counsel nevertheless contends that the validity of the May 29 Agreement is a question for the Surrogate's Court, and encourages this Court to abstain pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).

Petitioner's argument is unavailing. There is no motion before this Court to remand the actions involving the Surrogate's TROs to the Surrogate Court. Even if such a motion were filed, it would be unlikely to succeed. Abstention is appropriate in the following circumstances: (1) to avoid decision of a federal constitutional question arising in a case which may be disposed of on questions of state law; (2) to leave resolution of unsettled questions of state law bearing on important policy problems to the state courts; (3) to avoid interference with a pending state criminal proceeding; and (4) to avoid duplicative litigation based on considerations of wise judicial conservation. Abercrombie v. Andrew College, No. 04 Civ. 7717 (KMK), 2006 WL 1716857, at *10 (S.D.N.Y. June 15, 2006). Only the last item is conceivably

4

applicable here, as the Surrogate's Court is tasked with the probate of Joseph Gardner's will. However, litigations are considered duplicative for the purposes of <u>Colorado River</u> abstention only "when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp</u>, 108 F.3d 17, 22 (2d Cir. 1997). The gravamen of the claims in this action involve partnership law, which is not "essentially the same" as the testamentary issues that predominate in the Surrogate's Court proceedings; the disputed issues in this action require neither the interpretation nor the execution of the will.[1] Nor are the parties before the Surrogate's Court identical to the parties before this Court. Indeed, Petitioner cites to no case in which a court has declined jurisdiction pursuant to <u>Colorado River</u> in light of ongoing proceedings before a surrogate's court. Federal courts must heed the "virtually unflagging obligation . . . to exercise the jurisdiction given them," <u>Colorado River</u>, 424 U.S. at 813, and abstention would be inappropriate under the circumstances of this case, <u>cf.</u> <u>Marshall v. Marshall</u>, 126 S. Ct. 1735, 1749 (2006) ("[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from disposing of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."); <u>In re Blakeman</u>, 512 F. Supp. 325, 328 (E.D.N.Y. 1981) (declining to apply the probate exception when the "controversy is primarily between two contenders for control of a corporation").

---

[1] In particular, Petitioner contends that the dispute over 100 Fifth Avenue is "inextricably linked with the interpretation of Joseph Gardner's will." (Letter of Y. David Scharf, dated Aug. 15, 2006 ("Scharf Letter") at 9 n.8.) This Court disagrees. Weisman does not contest Petitioner's interpretation of the will. Rather, the dispute before this Court turns on the interpretation of the 100 Fifth Avenue Partnership Agreement. Contrary to Petitioner's suggestion, the interpretation of a partnership agreement does not "fall within the peculiar expertise of the Surrogate's Court. (Scharf Letter at 9 n.8.)

Nor do the equities balance in favor of Petitioner. Danielle Gardner entered into the May 29 Agreement to avoid dissolution of the partnerships. Although she understood at the time that the Trust had yet to be certified by the Surrogate's Court (see Letter of Robert I. Bodian, dated Aug. 18, 2006, Ex. B), she now seeks to exploit the absence of a certification to void the May 29 Agreement (see Memorandum in Opposition to Respondent's Motion to Vacate Temporary Restraining Orders, dated Aug. 18, 2006, at 11-12). Equity does not permit Petitioner to reap the benefits of the May 29 Agreement while, at the same time, repudiating those terms of the Agreement that she now disfavors. Further, on June 1, 2006, Petitioner described the offer to buy the West 56th Street property for $2.85 million as "a good deal." (Letter of Robert I. Bodian, dated Aug. 16, 2006, Ex. B.) Less than two months later, Petitioner sought to forestall the same $2.85 million deal by petitioning for the Surrogate's TROs. Therefore, equity strongly favors Weisman in this action.

For the foregoing reasons, this Court hereby dissolves the temporary restraining orders entered by the Surrogate's Court on July 28, 2006 in the following removed actions: Nos. 06 Civ. 5998, 06 Civ. 5999, 06 Civ. 6001, 06 Civ. 6002 and 06 Civ. 6003.

Dated:  August 21, 2006
        New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

6

*Counsel of Record*

Y. David Scharf, Esq.
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022
*Counsel for Petitioners-Defendant*

Robert I. Bodian, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
Chrysler Center
666 Third Avenue
New York, NY 10017
*Counsel for Respondent-Plaintiff*